UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 3:05-CR-83 JD |
| | ) | |
| DARNELL COOK | ) | |

ORDER

On March 15, 2006, Defendant Darnell Cook pled guilty pursuant to a plea agreement to possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count 4 of the Indictment), and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c) (Count 6 of the Indictment) [DE 14, 16]. On June 23, 2006, Mr. Cook was sentenced to one year and one day on Count 4, which was subsequently reduced to eight months on account of a retroactive guideline change [DE 25, 32]. The sentence on Count 4 was ordered to run consecutive to the requisite sixty month sentence imposed on Count 6. *Id.* Mr. Cook was also ordered to serve three years of supervised release on each count to run concurrently [DE 25]. On April 28, 2010, Mr. Cook was released from incarceration and his term of supervision was scheduled to expire on April 27, 2013.

In April 2012, the probation officer assigned to this case filed a petition to revoke Mr. Cook's supervised release. On May 9, 2012, Mr. Cook waived his right to a preliminary hearing and stipulated to probable cause [DE 41, 42]. On July 26, 2012, the Court held an evidentiary hearing on the final revocation of Mr. Cook's supervised release, consistent with Federal Rule of Criminal Procedure 32.1, at which time the government introduced the testimony of several witnesses in an attempt to prove Mr. Cook's various violations—all of which are contested. Specifically, Mr. Cook has been charged with the following alleged violations of his supervised

release: twice violating the mandatory condition that he not commit another federal, state, or local crime when on or about April 14, 2012, he allegedly committed the offense of possession of a controlled substance and visiting a common nuisance, as charged in Lake County Superior Court as a Class D Felony, and when on or about September 4, 2011, he allegedly committed the offense of failure to stop after an accident resulting in injury, as charged in Lake County as a misdemeanor; violating standard condition number 5 by failing to work regularly at a lawful occupation when he did not provide his probation officer any acceptable reason for being unemployed since April 2010; twice violating standard condition number 7 requiring him to refrain from possession or use of any controlled substance, when he tested positive for PCP on January 26 and February 16, 2012, and possessed Chonazepam pills (anti-anxiety medication) when searched by Gary police officers on April 14, 2012; violating standard condition number 9 requiring that he refrain from associating with convicted felons without permission of his probation officer, when he was arrested on April 14, 2012 and found to be riding in a vehicle with Ako Butler and Kenneth Snowden, both known convicted felons; and violating the special condition that he perform twenty hours of community service a week, which he agreed to do in February 2012, when as of April 16, 2012 he failed to provide verification that such community service was completed.[1] The Court now rules on the alleged violations as follows.

The Court may revoke Mr. Cook's term of supervised release if it finds by a preponderance of the evidence that Mr. Cook violated a condition of his supervised release. 18 U.S.C. § 3583(e)(3); *United States v. Musso*, 643 F.3d 566, 570 (7th Cir. 2011). For the reasons

---

[1] The conditions of Mr. Cook's supervised release were imposed on June 23, 2006 [DE 25], with the exception of the requirement that Mr. Cook perform community service which was formally added by Court order on April 19, 2012 [DE 33], as discussed *infra*.

discussed below, the government has not sufficiently established Mr. Cook's failure to report his efforts to become employed (standard condition number 5) and complete community service (special condition), but as detailed herein the government has proven the remaining violations by more than a preponderance.

Standard condition number 5 indicated that Mr. Cook "shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons" [DE 25 at 3]. In an attempt to prove that Mr. Cook violated this condition, the government presented the sworn testimony of the probation officer assigned to supervise Mr. Cook while on release, Ms. Danielle Battle. Ms. Battle testified that because Mr. Cook was unable to obtain employment, she requested that he document his efforts to get a job. She indicated that Mr. Cook did not submit documentation on a consistent basis; however, on cross-examination Ms. Battle acknowledged that Mr. Cook had informed her that he was in the process of applying for employment at U.S. Steel. In fact, Mr. Cook offered verification of his U.S. Steel application, which included an email confirming that Mr. Cook was scheduled to take an assessment test with U.S. Steel on February 11, 2011 [Def's Exbs. C, D, E, F]. Even though Ms. Battle did not receive documentation verifying Mr. Cook's application with U.S. Steel until the day of the revocation hearing, Ms. Battle acknowledged that Mr. Cook had previously advised her of his progress with obtaining employment—albeit, inconsistently.

In addition, Ms. Battle admitted that because Mr. Cook was having difficulty finding work (which is not so surprising given tough economic times), Mr. Cook agreed that he would perform community service. Thus, it is clear that Ms. Battle was apprised of the difficulty that Mr. Cook was having with obtaining work. Given this information, on February 2, 2012, Ms.

Battle submitted a supervised release modification request to the Court, and on April 19, 2012, the Court modified Mr. Cook's conditions to include community service [DE 33]. And while Ms. Battle testified that Mr. Cook did not regularly report his community service hours as of April 16, 2012, the government has offered insufficient evidence to show that Mr. Cook was bound to perform community service prior to April 19, 2012, or that Mr. Cook failed to look for work and report those efforts to Ms. Battle since April 2010.

On the other hand, the government has proven by ample evidence that Mr. Cook's conduct on April 14, 2012, resulted in his violating the mandatory condition that he not commit another crime[2] and the standard conditions that he refrain from possessing a controlled substance and associating with convicted felons.[3] To support Mr. Cook's commission of these violations, the government offered the sworn testimony of Gary Police Officer Isaiah Price III, Indiana State Police Detective Dante Colza, and Ms. Battle.

Officer Price testified that on April 14, 2012, he was dispatched to Melton Road in Gary, Indiana around 8:00 p.m. where he observed three male subjects sitting in a Cadillac outside of an assisted living residence. Upon approaching the Cadillac he smelled a strong odor of marijuana coming from the vehicle and therefore he removed the subjects from the vehicle with the assistance of other officers and identified the subjects as Mr. Kenneth Snowden (driver), Mr. Ako Butler (front seat passenger), and the Defendant, Mr. Cook (back seat passenger). In

---

[2]The mandatory condition at issue stated that "[t]he defendant shall not commit another federal, state or local crime" [DE 25 at 3].

[3]Standard condition number 7 stated that "[t]he defendant . . . shall not purchase, possess, use, distribute, or administer any controlled substance, . . . except as prescribed by a physician." And standard condition number 9 stated that "[t]he defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer" [DE 25 at 3].

4

relevant part, Mr. Cook was then searched for weapons and taken into custody for visiting a common nuisance, that being the vehicle where the strong odor of marijuana emanated. *See* Ind. Code 35-48-4-13(a) ("a person who knowingly or intentionally visits a . . . vehicle, or other place that is used by any person to unlawfully use a controlled substance commits visiting a common nuisance, a Class B misdemeanor."). While charged with the offense of visiting a common nuisance, the Court does not believe that the government sustained its burden in proving that Mr. Cook violated his terms of supervised release by committing the crime itself given the lack of evidence that the vehicle was used for drug use on more than one occasion. *Zuniga v. State*, 815 N.E.2d 197, 199-200 (Ind. Ct. App. 2004) ("we can infer beyond a reasonable doubt that based upon the strong smell of burnt marijuana [the defendant] knew that the residence was used for the unlawful use of a controlled substance"; however, in order to convict the defendant of visiting a common nuisance the state must not only prove that the defendant knew the structure was used for the unlawful use of a controlled substance, but it must also prove that it had been so used on more than one occasion).

In any event, upon arriving at the jail Mr. Cook was secured in the booking area by being handcuffed to a chair a few seats away from where Mr. Butler was also secured in a chair by handcuffs. According to Officer Price, while in the booking area of the jail he received a phone call from the front desk officers who advised Officer Price that they observed Mr. Cook remove a plastic baggy from his waistband area and throw it behind the door of the booking room. Thus, Officer Price moved the door slightly and recovered a plastic baggy containing yellow pills. All of the events were recorded by a video monitor in the booking area which clearly depicted Mr. Cook reaching in and retrieving something from his front right pocket near

his waistband and tossing the object behind the door, and then Officer Price recovering the item which consisted of a plastic baggie containing ten yellow pills [Government Exb. 3].  The yellow pills recovered by Officer Price and placed in inventory [Government Exbs. 1, 2] were taken by Detective Colza to the Indiana State Police laboratory where the pills were tested and found to contain Clonazepam [Government Exbs. 5, 6].

The Court finds that this evidence shows beyond a preponderance that Mr. Cook violated the mandatory condition that he not commit another crime when on or about April 14, 2012, he committed the Class D felony offense of possessing a controlled substance, Clonazepam. *See* Ind. Code 35-48-2-10(a), (c) (listing Clonazepam as a schedule IV controlled substance); Ind. Code 35-48-4-7(a) (a person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses a controlled substance (pure or adulterated) classified in schedule I, II, III, or IV, except marijuana, hashish, salvia, or a synthetic cannabinoid, commits possession of a controlled substance, a Class D felony); *Williams v. State,* 930 N.E.2d 602, 611 (Ind. Ct. App. 2010) (noting that it is a crime in Indiana to, "without a valid prescription . . ., knowingly or intentionally possess[ ] a controlled substance . . . classified in schedule I, II, III, or IV . . ." and the amount of the controlled substance that is possessed is not an element of that crime; rather, the offense is committed by mere possession of a controlled substance).  This same April 14, 2012 conduct by Mr. Cook constitutes a violation of standard condition number 7, whereby Mr. Cook failed to refrain from possessing controlled substances.

Further, these facts establish that the government has also proven by a preponderance that Mr. Cook violated standard condition number 9 which required Mr. Cook to refrain from

6

associating with convicted felons. Ms. Battle confirmed that Mr. Butler and Mr. Snowden are convicted felons who were previously on supervised release by this Court, and the testimony of Officer Price established that Mr. Cook was found sitting in the same vehicle with Mr. Butler and Mr. Snowden when they were arrested on April 14, 2012.

In support of the allegation that Mr. Cook also committed the offense of failure to stop after an accident resulting in injury on or about September 4, 2011, the government presented the testimony of Mr. Daniel Oleck and Trooper Frederick Blohm, Jr. with the Indiana State Police. Mr. Oleck testified that just after midnight on September 4, 2011 he was traveling westbound on I-80 in Gary when he rear ended another vehicle because he was distracted and his visibility was impaired because it was raining. After Mr. Oleck's vehicle flipped about six times, it came to a rest on the shoulder of the road. According to Mr. Oleck, he then approached the vehicle that he rear-ended and observed the driver, identified at the hearing as Mr. Cook (whom Mr. Oleck had never met), get out of the car. Mr. Oleck testified that Mr. Cook became confrontational, threatened Mr. Oleck, and then fled the scene running north across the exit ramp [Government Exb. 8]. Mr. Oleck indicated that he had suffered scrapes and cuts from the accident, was bleeding from his arms and head, and was taken to the hospital where he was bandaged-up but refused to take a chemical test (even though Mr. Oleck testified that he had drank only one beer earlier that evening).

Trooper Blohm testified that after receiving the dispatch at 12:25 a.m, he arrived on the scene at 12:32 a.m. in light rain which did not affect his visibility. Trooper Blohm found two vehicles with extensive damage and only one driver on the scene, Mr. Oleck, who was visibly injured and was bleeding from his head and leg [Government Exbs. 7, 9, 10]. Trooper Blohm

7

testified that Mr. Oleck was inebriated, likely having a blood alcohol content in excess of .15 BAC, and told Trooper Blohm that four subjects ran from the rear-ended vehicle after one subject pointed a gun at him. Trooper Blohm indicated that by 1:14 a.m. Mr. Cook had not returned to the scene and it would have taken at most ten minutes to get to the TA gas station and back.[4]

The Court finds that given the evidence presented, the government has proven by a preponderance that Mr. Cook violated the mandatory condition that he not commit another crime when on or about September 4, 2011, he committed the Class A misdemeanor of knowingly and intentionally failing to stop and comply with Indiana Code 9-26-1-1(2) after causing injury to another person. Ind. Code 9-26-1-8(a); *see* Ind. Code 9-26-1-1(2) (requiring drivers who are involved in an accident resulting in the injury, death, or entrapment of a person to immediately stop their vehicle at the scene and remain there until he or she provides identifying information); *Armstrong v. State*, 848 N.E.2d 1088, 1092 (Ind. 2006) (holding that the duties that the statute imposes upon a driver are triggered regardless of whether the driver's vehicle struck anyone or anything). Even though Mr. Oleck's senses may have been somewhat impaired by intoxication, the Court finds his testimony credible when he stated that Mr. Cook fled the scene of the accident after their confrontation and never returned. Further, the Court concludes that Mr. Cook knew or reasonably should have known that the accident resulted in injury to Mr. Oleck, given that Mr. Oleck's car flipped several times resulting in cuts to Mr. Oleck's head. *See State*

---

[4] The police report [Government Exb. 9] indicated that Mr. Cook was later stopped by police and reported having gone to the TA gas station after the accident to call his parents to bring proof of insurance. This exhibit was admitted without objection by the defendant and bore substantial indicia of reliability given that Trooper Blohm testified to creating the report at or near the time of the accident during the ordinary course of business. *See United States v. Kelley*, 446 F.3d 688 (7th Cir. 2006).

*v. Gradison,* 758 N.E.2d 1008, 1011 (Ind. Ct. App. 2001) (a driver need not have actual knowledge that an accident has resulted in injury to be convicted under the statute; rather, where conditions were such that the driver should have known that an accident occurred or should have reasonably anticipated that the accident resulted in injury to a person, the requisite proof of knowledge is present) (internal quotations and citations omitted). This finding is further supported by the credible testimony of Trooper Blohm who described the events he witnessed on September 4, 2011 in great detail, and confirmed that upon his arrival Mr. Cook was not at the scene and never returned to it, and that Mr. Oleck was visibly injured with both cars sustaining extensive damage from the accident.

Lastly, Ms. Battle's testimony established by a preponderance that Mr. Cook used controlled substances while on supervised release, when he tested positive for Phencyclidine (PCP) on January 26, 2012 and February 16, 2012, which constitutes violations of standard condition number 7 requiring Mr. Cook to refrain from using any controlled substance. Ms. Battle testified to the procedures used to collect and test Mr. Cook's urine sample on those days which confirms by a preponderance that Mr. Cook in fact tested positive for PCP on January 26, 2012 and February 16, 2012, as indicated by the probation officer's in-house laboratory testing and confirmed by the testing conducted by Alere Laboratory [Government Exb. 11]. *See also United States v. Trotter*, 270 F.3d 1150, 1153-54 (7th Cir. 2001) (testing positive for drugs can also support an inference of drug possession).

Consistent with sentencing guideline section 7B1.1(b), the grade of the violation is determined by the violation having the most serious grade. Because the government has shown beyond a preponderance that Mr. Cook violated the mandatory condition that he not commit

9

another crime, when on or about April 14, 2012 he committed the Class D felony offense of possessing a controlled substance (Clonazepam), in violation of Ind. Code 35-48-2-10(a), (c) and 35-48-4-7(a), Mr. Cook's most serious violation is a grade B violation.[5] U.S.S.G. § 7B1.1(a)(2). A grade B violation, combined with Mr. Cook's criminal history category of I, produces an advisory guideline sentencing range of four to ten months of imprisonment, consistent with guideline section 7B1.4.

SO ORDERED.

ENTERED:  August 10, 2012

/s/ JON E. DEGUILIO
Judge
United States District Court

---

[5] Mr. Cook's remaining violations are Grade C violations. U.S.S.G. § 7B1.1(a)(3). In particular, Mr. Cook's failure to stop after causing injury to another person on September 4, 2011, is a misdemeanor offense punishable by a term of imprisonment of one year or less under Ind. Code 9-26-1-8(a), and therefore qualifies as a Grade C violation. U.S.S.G. § 7B1.1(a)(3). Similarly, Mr. Cook's violations of his "other condition[s] of supervision" qualify as Grade C violations. *Id.*